# UNITED STATES DISTRICT COURT FOR THE
# MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| EDWARD C. BROWN, | : CIVIL ACTION NO. 3:CV-14-0777 |
| Plaintiff | : (Judge Nealon) |
| v. | : |
| UNITED STATES OF AMERICA, | : |

## MEMORANDUM

**I. Background**

Plaintiff, Edward C. Brown, an inmate formerly confined at the United States Penitentiary, ("USP-Lewisburg"), Lewisburg, Pennsylvania[1], filed the above captioned action pursuant to the Federal Tort Claims Act ("FTCA") and <u>Bivens v. Six Unknown Fed. Narcotics Agents</u>, 403 U.S. 388 (1971). The named Defendants are the United States of America, the Bureau of Prisons, USP-Lewisburg, and Dr. Baker.

Presently pending before the Court is Defendants' motion to dismiss and for summary judgment. (Doc. 14). The parties have fully briefed the issues and the

---

1. Subsequent to the filing of the above captioned action, Brown was released from prison and resides at 1594 Denton Road, Dothan, Alabama.

motions are now ripe for disposition. For the reasons that follow, the Court will grant the Defendants' motion to dismiss and for summary judgment.

## II. Standards of Review

### A. Bivens Standard

Pursuant to Bivens, the District Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 to entertain an action brought to redress alleged federal constitutional or statutory violations by a federal actor. Bivens, supra. Under Bivens, "a citizen suffering a compensable injury to a constitutionally protected interest could invoke the general federal question jurisdiction of the district court to obtain an award of monetary damages against the responsible federal official." Butz v. Economou, 438 U.S. 478, 504 (1978). A Bivens-style civil rights claim is the federal equivalent of an action brought pursuant to 42 U.S.C. § 1983 and the same legal principles have been held to apply. See, Paton v. LaPrade, 524 F.2d 862, 871 (3d Cir.1975); Veteto v. Miller, 829 F.Supp. 1486, 1492 (M.D.Pa.1992); Young v. Keohane, 809 F.Supp. 1185, 1200 n. 16 (M.D.Pa.1992). In order to state an actionable Bivens claim, a plaintiff must allege that a person has deprived him of a federal right, and that the person who caused the deprivation acted under color of federal law. See West v.

Atkins, 487 U.S. 42, 48 (1988); Young v. Keohane, 809 F.Supp. 1185, 1199 (M.D.Pa.1992); Sharpe v. Costello, 2007 WL 1098964, *3 (M.D.Pa., 2007).

### B. Summary Judgment

Federal Rule of Civil Procedure 56(c) requires the court to render summary judgment " . . . forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original).

A disputed fact is "material" if proof of its existence or nonexistence would affect the outcome of the case under applicable substantive law. Anderson, 477 U.S. at 248; Gray v. York Newspapers, Inc., 957 F.2d 1070, 1078 (3d Cir. 1992). An issue of material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson, 477 U.S. at 257; Brenner v. Local 514,

United Brotherhood of Carpenters and Joiners of America, 927 F.2d 1283, 1287-88 (3d Cir. 1991).

When determining whether there is a genuine issue of material fact, the court must view the facts and all reasonable inferences in favor of the nonmoving party. Moore v. Tartler, 986 F.2d 682 (3d Cir. 1993); Clement v. Consolidated Rail Corporation, 963 F.2d 599, 600 (3d Cir. 1992); White v. Westinghouse Electric Company, 862 F.2d 56, 59 (3d Cir. 1988). In order to avoid summary judgment, however, the nonmoving party may not rest on the unsubstantiated allegations of his or her pleadings. When the party seeking summary judgment satisfies its burden under Rule 56(c) of identifying evidence which demonstrates the absence of a genuine issue of material fact, the nonmoving party is required by Rule 56(e) to go beyond the pleadings with affidavits, depositions, answers to interrogatories or the like in order to demonstrate specific material facts which give rise to a genuine issue. Celotex Corporation v. Catrett, 477 U.S. 317, 324 (1986). The party opposing the motion "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Electric Industrial Co. v. Zenith Radio, 475 U.S. 574, 586 (1986). When Rule 56(e) shifts the burden of production to the nonmoving party, that party must produce evidence to show the existence of every element essential to its

case which it bears the burden of proving at trial, for "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex, 477 U.S. at 323. See Harter v. G.A.F. Corp., 967 F.2d 846, 851 (3d Cir. 1992).

### C. Motion to Dismiss

Fed.R.Civ.P. 12(b)(6) authorizes dismissal of a complaint for "failure to state a claim upon which relief can be granted." Under Rule 12(b)(6), we must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) (quoting Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008)). While a complaint need only contain "a short and plain statement of the claim," Fed.R.Civ.P. 8(a)(2), and detailed factual allegations are not required, Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." Id. at 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Ashcroft v. Iqbal, 556 U.S. 662 (2009) (quoting Twombly, 550 U.S. at 556). "[L]abels and conclusions" are

not enough, Twombly, 550 U.S. at 555, and a court "is not bound to accept as true a legal conclusion couched as a factual allegation." Id. (quoted case omitted). Thus, "a judicial conspiracy claim must include at least a discernible factual basis to survive a Rule 12(b)(6) dismissal." Capogrosso v. The Supreme Court of New Jersey, 588 F.3d 180, 184 (3d Cir. 2009) (per curiam).

In resolving the motion to dismiss, we thus "conduct a two-part analysis." Fowler, supra, 578 F.3d at 210.  First, we separate the factual elements from the legal elements and disregard the legal conclusions.  Id. at 210-11. Second, we "determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief".  Id. at 211 (quoted case omitted).

### III. **Statement of Facts[2]**

---

2 .    Middle District of Pennsylvania Local Rules of Court provide that in addition to filing a brief in response to the moving party's brief in support, "[t]he papers opposing a motion for summary judgment shall included a separate, short and concise statement of material facts responding to the numbered paragraphs set forth in the statement [of material facts filed by the moving party] ..., as to which it is contended that there exists a genuine issue to be tried."  See M.D. Pa. LR 56. 1.  The rule further states that the statement of material facts required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party.  See id.  Because Plaintiff has failed to file a separate statement of material facts controverting the statement filed by Defendants, all material facts set forth in Defendants' statement (Doc. 15) will be deemed admitted.

A. **Medical Care**

On February 2, 2012, Brown arrived at USP-Lewisburg and was seen by dental staff, complaining that he has "two teeth that are giving [him] some pain." (Doc. 15-2 at 18, Bureau of Prisons Health Services Dental Soap/Admin Encounter). During this examination, Brown's gold slip crown was confiscated. (Doc. 15-1 at 3, Declaration of Dr. Keith Baker, D.D.S. at ¶ 6). In accordance with BOP Program Statement 6400.02, Dental Services, precious metals removed from inmates mouths are placed in a secure area and prepared for disposition as the inmate's personal property. (Doc. 15-3 at 1, BOP Program Statement 6400.02). An "Inmate Personal Property Record" form was completed, and Brown was asked to provide a mailing address in order for the crown to be sent home. (Doc. 15-3 at 22, Inmate Personal Property Record Form). As of the date of Defendants' motion to dismiss and for summary judgment, Brown has yet to provide a mailing address, and as such, the slip crown remains in the possession of USP-Lewisburg dental staff. (Doc. 15-1 at 4, Baker Decl. at ¶ 8-9).

On February 13, 2012, Brown was seen by Health Services staff for an injury assessment involving his face. (Doc. 15-3 at 23, Bureau of Prisons Health Services Clinical Encounter). During this examination, Brown alleged he "fell down the steps due to severe toothache." Id. He informed medical staff he was experiencing facial

and nasal pain, as well as tenderness in his upper molar area.  Id.  Treatment consisted of pinching the nose to stop the bleeding and X-rays were ordered to rule out fractures.  Id.  X-rays showed a clot in the nasal passages, but there were no findings of a fracture.  (Doc. 51-3 at 28, Radiology Report).  Brown was informed to return for follow-up as needed.  (Doc. 15-3 at 23, Bureau of Prisons Health Services Clinical Encounter).

On May 29, 2012, during a sick call visit, Brown complained to dental staff of having some swelling in his upper jaw.  (Doc. 15-2 at 14, Bureau of Prisons Health Services Dental Soap/Admin Encounter).  After a thorough examination of Brown's mouth, there was an abnormal finding on tooth #14, bone loss, calculus present (calcified plaque), exposure of root surface, furcation defect (loss of bone usually as a result of periodontal disease), periapical radiolucency (chronic inflammation with bone loss around the apex of a tooth, plaque, sensitivity, swelling in vestibule, tenderness, and gross periodontal destruction on tooth).  Id.  As a result of those findings and Brown's request to extract the painful tooth, local anesthesia was given and an extraction of tooth #14 was completed.[3]  Id.  Brown was given Ibuprofen for

---

3 .    Prior to Brown's tooth extraction, he signed a consent form acknowledging the potential complications of an extraction.  (Doc. 15-2 at 49, Federal Bureau of Prisons Dental Services Invasive Dental Procedures).  This form lists as a possible risk factor

pain and educated on post-operative care.  Id.  No complaints by inmate Brown were made during the procedure, nor were there any concerning events.  Id.  Moreover, Brown did not voice any concerns after the extraction and prior to his transfer to USP Pollock.  Id.

On June 25, 2012, Brown was transferred from USP-Lewisburg to the United States Penitentiary in Pollock, Louisiana ("USP-Pollock"), arriving at USP Pollock on July 5, 2012.  (Doc. 15-1 at 6, Baker Decl. at ¶ 14).  Although Dr. Baker did not render any treatment to Brown after his transfer to USP-Pollock, Brow's medical records reveal that he continued to receive medical treatment at USP-Pollock.  Id.

On July 19, 2012, Brown was seen by USP-Pollock medical staff during sick call for complaints of shoulder pain. Baker Decl.  (Doc. 15-3 at 29, Bureau of Prisons Health Services Encounter).  During this examination, Brown admitted he was hit on the shoulder with a bat, hit on the nose during a fight at USP-Lewisburg in 2007, and most recently, hit on the nose again during a physical altercation.  Id.  He reported that he could not breathe from his left nostril and would like to have it repaired.  Id.  A

---

the potential development of "Temporomandibular joint disorder (jaw problem), muscle soreness or restricted opening of the mouth." Id.  By signing the consent form, Brown assumed the risks and attested to the knowledge of possible developments stemming from invasive surgery.  Id.

deviated septum was noted, and treatment of his nostril consisted of observation and recommended compliance with nasalide (an anti- inflammatory nasal spray). Id. A referral to orthopaedics was made for Brown's shoulder. Id.

On January 23, 2013, Brown was seen by USP Pollock dental staff for a dental health history screening. (Doc. 15-2 at 10, Bureau of Prisons Health Services Dental Health History Screen). As noted on the screening form, Brown had a myriad of health concerns to include pain around his ear and sensitive teeth. Id.

On February 6, 2013, Brown was seen by USP Pollock dental staff for pain in TMJ. (Doc. 15-2 at 8, Bureau of Prisons Health Services Dental Soap/Admin Encounter). A panoramic X-ray was taken. Id. Findings included bruxism (grinding or clenching of teeth) and TMJ cracking and popping. Id. A referral to an oral surgeon was made. Id.

On March 7, 2013, Brown was seen in the USP Pollock dental clinic for TMJ pain. (Doc. 15-2 at 6, Bureau of Prisons Health Services Dental Soap/Admin Encounter). It was noted that Brown was seen by the oral surgeon who recommended a soft diet and a night guard. Id. Surgery was not necessary. Id. A night guard would be made if pain persisted. Id.

On April 3, 2013, Brown was seen by USP-Pollock dental staff for "TMJ/Around Ear." (Doc. 15-2 at 3, Bureau of Prisons Health Services Dental Soap/Admin Encounter). Brown complained of aching, tenderness, lingering, and radiating pain. Id. He said the onset was "several months ago." Findings were indicated as TMJ. Id. He was placed on "call-out" for a soft splint due to his existing periodontal condition. Id.

On April 4, 2013, it was noted that Brown complained to the SHU Officer that he was missing his lower gold prosthesis (bridge). (Doc. 15-2 at 2, Bureau of Prisons Health Services Dental Soap/Admin Encounter - Administrative Note). After a search for his prosthesis, it was discovered that it was inadvertently "picked up in the alginate impression," which was made the previous day for his splint. (Doc. 15-1 at 58, Bureau of Prisons Health Services Dental Soap/Admin Encounter). The prosthesis was returned to Brown. Baker Decl. Id.

On April 5, 2013, Brown was given a night guard (soft splint) for his TMJ dysfunction. Baker Decl. Id. His bridge was returned to him, placed on his teeth, and seated, and he was educated on the night guard and its purpose and use. Id. He had no complaints. Id.